ARMOUR LEGAL, LLC.
Matthew W. Bartz (SBN#024972)
3317 S. Higley Rd. Suite 114-444
Gilbert, AZ 85297
Telephone: 602-550-8919
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Edgar Jesus Ruiz-Alvarado ,<br><br>Defendant. | Case No.: 2:23-cr-01085-DJH-2<br><br>MOTION FOR VARIANCE FROM ADVISORY GUIDELINES AND MEMORANDUM AT SENTENCING |

Defendant, Edgar Jesus Ruiz-Alvarado, by and through counsel, submits the following as his Motion for Variance and Sentencing Memorandum for this Court's consideration at sentencing and respectfully request downward variance reductions to achieve a sentence of no more than 30 months as his similarly situated co-defendant Fidel Abraham Guzman received, but more than the 24 months that the less culpable co-defendant Israel Diaz-Guzman received.

Mr. Ruiz-Alvarado also challenges the guideline calculations of the Pre-Sentence Report  Paragraph 33 acurately calculates the base offense level as 20, as this offense involved the theft and possesion of semi-automatic firearms capable of accepting large

capacity magazines (to wit: AK-47 and M249) by a prohibitted possessor (to wit: Mr. Ruiz-Alvarado).

However, paragraph 34 erroneously adds a +4 level enhancement stating that there were over 21 firearms involved.

Neither paragraphs 36 nor 37, which each recommend a +4 enhancement for a combined +8 enhancement, should be counted in Mr. Ruiz-Alvarado's case.

These issues will be addressed in the Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 20th Day of December, 2024.

/s/ *Matthew W. Bartz*
Attorney for Defendant

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE

## I. Facts

The Presentence Investigation Report (PSR) is an accurate representation of Mr. Ruiz-Alvarado's, his past history, and his life.

He is 28 years old. His biological mother died when he was 3 years old. His step-mother died 4 years ago. As a child, his homelife was far from perfect. His father struggled with a drug addiction and was sent to prison twice. His brother was also murdered in Mexico. Mr. Ruiz-Alvarado ended up being raised by his grandmother and his aunt. He hasn't even spoken to his father in the past 3 years. Mr. Ruiz-Alvarado received counselling for depression after his step-mother passed away and his brother was murdered.

Unfortunately, Mr. Ruiz-Alvarado also used cocaine as a coping mechanism to help him with his depression. This resulted in him making poor decisions and getting involved with a person named Pechi that he met at Twin Peaks Bar in Glendale, AZ and who he began obtaining Glock pistols for and ultimately led to him being arrested after he and Fidel Abraham Guzman burglarized and FFL and stole an AK-47 and M249 that Pechi was going to resell and pay them for.

The whole thing is tragic because Mr. Ruiz-Alvarado had a good job. He worked in HVAC and received $125 per day. He paid for his own apartment, car and had a girlfriend in Tucson. He even had money left over to send to Mexico to help support his

two children. The allure of "easy money" combined with an impaired mental state resulted in him committed this crime.

Although the PSR defines Mr. Ruiz-Alvarado as a leader/organizer, all of his criminal activity was directed by Pechi. It is true that Mr. Ruiz-Alvarado recruited Fidel Abraham Guzman to assist him in obtaining firearms by lying on 4473 forms to obtain them. However, Mr. Ruiz-Alvarado and Mr. Guzman both profited equally from the arrangement they had with Pechi. In fact, although they were both involved in the burglary of the FFL to obtain the M249 and AK-47 rifles, it was Mr. Guzman that drove them to the FFL and Mr. Guzman that used a power tool to cut through the gate protecting the entrance to the store. After the burglary, each of them kept one of the rifles that they had stolen.

**II. Sentencing Recommendation**

He asks that this Court follow the terms of the plea agreement. In terms of sentencing, Mr. Ruiz-Alvarado is similarly situated to his co-defendant, Fidel Abraham Guzman in every regard. Mr. Guzman was sentenced by this Court on October 25, 2024 to 30 months in the Bureau of Prisons followed by a term of 36 months supervised release. Neither Mr. Ruiz-Alvarado, nor Mr. Guzman have any criminal history. Both of them planned and executed the purchase of Glock pistols for Pechi. Both of them planned and executed the burglary of an FFL store to obtain two rifles they could sell for profit. The same way that Mr. Ruiz-Alvarado had Mr. Guzman purchase firearms for him, Mr. Guzman also recruited his nephew, the third co-defendant in this matter—Israel Diaz-Guzman, to purchase a gun for him. The biggest difference between these two main

defendants is that Mr. Guzman is a 41 year old U.S. Citizen, and Mr. Ruiz-Alvarado is a 28 year old Mexican National.

As the Court knows, the goal of sentencing is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553 which states:

> 18 U.S.C. § 3553. Imposition of a sentence
>
> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> ...
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

## III. Challenges to PSR Guideline Calculations

Mr. Ruiz-Alvarado also challenges the guideline calculations of the Pre-Sentence Report Paragraph 33 acurately calculates the base offense level as 20, as this offense involved the theft and possesion of semi-automatic firearms capable of accepting large capacity magazines (to wit: AK-47 and M249) by a prohibitted possessor (to wit: Mr. Ruiz-Alvarado).

However, paragraph 34 erroneously adds a +4 level enhancement stating that there were over 21 firearms involved. While the initial charges in the case do involve 21 firearms, there is not a nexus of relevant conduct between the burglary and possession of the AK-47 and M249 rifles versus the falsification of information on 4473 forms that the defendants used to obtain 19 pistols. The 19 pistols that were purchased should not be calculated as a guideline enhancement as there is not sufficent relevant conduct. Although both types of offenses involve firearms, they are totally unique in every way.

Neither paragraphs 36 nor 37, which each recommend a +4 enhancement, should be counted in Mr. Ruiz-Alvarado's case. There is no evidence in this case to support the claim that he knowingly tranferred the firearms to a prohibitted possessor or that he knowingly tranferred them to a person he knew was going to transport them to Mexico.

Paragraph 36 incorrectly states that he knew that "Pechi", whom he transferred the firearms to, was a prohibitted possessor—there is absolutely no evidence in the discovery of this case to indicate that Pechi was a prohibitted possessor. Even paragraph 14 of the PSR states that Mr. Ruiz-Alvarado initially met Pechi at a bar in Glendale, AZ and learned that Pechi lived in Mexico. During his interview, Mr. Ruiz-Alvarado gave conflicting statements regarding where Pechi lived. In the early portion of the interview Mr. Ruiz-Alvarado said that Pechi was from Mexico but lived in the United States; later he said that Pechi lived in Mexico. Just because a person lives in Mexico, does not mean that person is a prohibitted possesor. This is especially true of a person that apparently has the ability to easily spend time in both Glendale, AZ and Mexico, as Pechi did. The same is true of persons that utilize straw buyers—as Pechi did with Mr. Ruiz-Alvarado,

not all persons that utilize a straw buyer are a prohibitted possessor—some people just do not want the Federal Government being aware of how many firearms they own or have purchased and use straw buyers to hide the purchases. In this case, the +4 requested in Paragraph 36 should not be included because there is no evidence that Pechi was a prohibitted possessor.

Paragraph 37 should also not be counted against Mr. Ruiz-Alvarado because the evidence in the case is insufficent to establish that Mr. Ruiz-Alvarado knew the firearms he obtained for Pechi were being transported to Mexico. Pechi told Mr. Ruiz-Alvarado that Pechi intended to sell the M249, but did not tell him it was being sold to a buyer in Mexico or transported to Mexico. Mr. Ruiz-Alvarado stole the M249 together with co-defendant Fidel Guzman, and was told by Pechi that they would be compensated for their acquisition of the firearm after Pechi sold it. He was never told the M249 was going to Mexico. Considering that Pechi did not provide any money to Mr. Ruiz-Alavardo to purchase this $12,000 rifle, and was only going to pay Mr. Ruiz-Alvarado $5,000 for the rifle after Pechi resold it, there is no reason to even suspect the M249 was being sent to Mexico. Pechi could have sold it in the United States for $10,000 (even $2,000 under MSRP) have paid Mr. Ruiz-Alvarado $5,000 and still made a $5,000 profit for himself on the transaction. Additionally, Paragraph 15 of the PSR mentions that a person named Perry in Mexico sent photos of guns he wanted to Mr. Ruiz-Alvarado. This information comes directly from Mr. Ruiz-Alvarado's post Miranda statement to investigators. However, Mr. Ruiz-Alvarado never told investigators that he purchased, obtained or sent any firearms to Perry. His statement was made in response to a question of whether or

not investigators would find photos of guns on his phone and he advised that he recently actived a phone that he used to communicate with Perry in Mexico and that Perry had sent him photos of guns that he wanted. Mr. Ruiz-Alvarado never admitted to, nor is there any evidence, that he purchased, obtained or shipped guns to Perry. The +4 enhancement recommended in Paragraph 37 should not be included simply because there is absolutly no evidence in the case to support that Mr. Ruiz-Alvarado knew that any any of the guns he obtained for Pechi were going to Mexico, and Perry simply sent him photos of guns that he wanted, but Mr. Ruiz-Alvarado never obtained guns for Perry.

## IV. Motion for Variance

Mr. Ruiz-Alvarado request this court consider as grounds for a downward variance the aberrant behavior departure rational under § 5K2.20. The Sentencing Guideline provide for a reduction where the defendant's conduct is "aberrant". Mr. Ruiz-Alvarado involvment in this case is an isolated offense that his a massive deviation from the law abiding life he had lived.

Mr. Ruiz-Alvarado additionally requested that court consider as grounds for a downward variance the need to punish similarly situated defendants in a similar manner. As outlined, Mr. Ruiz-Alvarado and Mr. Fidel Guzman played nearly identical roles in their involvement in the crimes discussed. Both of them have suffered depression from family tragedies. The largest difference between them is that Mr. Guzman is 41 years old and a U.S. Citizen, whereas, Mr. Ruiz-Alvarado is much younger at 28 years old and is a Mexican National. Mr. Ruiz-Alvarado should be treated the same by the Court as Mr.

Guzman was treated and sentenced to a term of 30 months in the Bureau of Prisons, followed by 36 months of Supervised Release.

**V. Conclusion**

Given the circumstances in this case, and regardless of the rulings made regarding Mr. Ruiz-Alvarado's challenges to the Guideline Calculations of the PSR, Mr. Ruiz-Alvarado should be sentenced to a term of 30 months in the Bureau of Prisons followed by 36 months of Supervised Release. Such a sentence is sufficient but not greater than necessary to comply with the sentencing purposes of the U.S. Sentencing Guidelines outlined in 18 U.S.C. § 3553. Additionally, such a sentence will ensure that nearly identically situated defendants in the same case are treated similarly.

RESPECTFULLY SUBMITTED this 20th Day of December, 2024.

ARMOUR LEGAL, L.L.C.

/s/ *Matthew W. Bartz*
Attorney for Defendant

I hereby certify that on Decmeber 20, 2024:

I electronically transmitted the attached document directly to the following parties via email:

Honorable Diane J. Humetewa and
Addison Owen, Assistant U.S. Attorney

Honorable Diane J. Humetewa
Humetewa_chambers@azd.uscourts.gov

Addison Owen, Assistant U.S. Attorney
Addison.Owen@usdoj.gov

Demetra Presley, US Probation Officer
Demetra_Presley@azd.uscourts.gov

By: */s/Matthew W. Bartz*